

**FILED**
SEP 2 5 2015

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| GENE JIRAK, | CIV 14-4128 |
| Plaintiff, | |
| vs. | |
| | MEMORANDUM OPINION |
| WARDEN J.A. TERRIS, in his individual and professional capacities; ASSISTANT WARDEN TRUE, in his individual and professional capacities; CMS SUPERVISOR WOLFE, in his individual and professional capacities; SAFETY SUPERVISOR KALISTA, in his individual and professional capacities, UNIT MANAGER STONER, in his individual and professional capacities, DR. MALATINKSY, Clinic Director HSD, in his individual and professional capacities; DIRECTOR CHARLES SAMUELS, in his individual and professional capacities; ATTORNEY GENERAL ERIC HOLDER, Department of Justice, in his individual and professional capacities; and UNIT MANAGER ARTURO AVILES, in his individual and professional capacities, | AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Before the Court is Defendants' motion to dismiss Plaintiff Gene Jirak's ("Plaintiff" or "Jirak") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, 12(b)(3) for improper venue, and 12(b)(6) for failure to state a claim. Alternatively, Defendants move to dismiss the complaint pursuant to the Prisoner Litigation Reform Act (PLRA) for failure to exhaust administrative remedies. For the following reasons, Defendants' motion is granted.

## BACKGROUND

Plaintiff Gene Jirak is a federal inmate currently incarcerated at the Federal Prison Camp in Yankton, South Dakota ("FCP Yankton"). He was sentenced by the United States District Court for the Northern District of Iowa on October 11, 2012 to 21 month's imprisonment for submitting a false claim for tax refund, uttering a forged treasury check, committing mail fraud, and committing aggravated identity theft. At all times relevant to the allegations contained in the Complaint, however, Plaintiff was incarcerated at the Federal Correctional Institution in Milan, Michigan ("FCI Milan"). On April 30, 2013, while incarcerated at FCI Milan, Plaintiff claims that he was ordered by Defendant Arturo Aviles to use an electric power washer in a utility room, "Unit F2." Unit F2, Plaintiff alleges, was wired with live electricity at the time. Furthermore, Plaintiff was without proper equipment or training. Unit F2, according to the Complaint, was filled with one to two inches of standing water and was known to be contaminated with asbestos and lead. When Plaintiff protested, he was told that he could either complete the assigned work or an incident report would be filed against him. Shortly after the incident, on May 13, 2013, Plaintiff filed a tort claim under the Federal Tort Claims Act with the North Central Regional Office (NCRO) of the Bureau of Prisons (BOP) against the prison officials alleged to have coerced him into cleaning the unsafe room. Doc. 37-1 at 2. In the claim, Plaintiff sought damages in the amount of $5 million. *Id.* In response, FCI Milan staff investigated Plaintiff's claim. The investigation revealed neither that Plaintiff experienced any physical harm nor that he had been seen by medical personnel at FCI Milan. Furthermore, the investigation did not indicate that Plaintiff had filed a claim for work-related injury with the Safety Department or any other staff member.

After filing the tort claim, Plaintiff alleges he was intimidated and retaliated against by various prison officials at FCI Milan. The officials, according to Plaintiff, sought to pressure Plaintiff into withdrawing the tort claim. One such alleged incident involved Defendants Warden J.A. Terris ("Terris" or the "Warden"), Assistant Warden True (True), CMS Supervisor Wolfe (Wolfe), Safety Supervisor Kalista (Kalista), and Unit Manager Stoner (Stoner). It is alleged by Plaintiff that he was informed by these Defendants that Unit F2 was not contaminated with asbestos. Complaint at 6. Furthermore, it is alleged in the Complaint that the Defendants "joked around" about putting Plaintiff

2

"on the lead and asbestos cleaning crew." *Id.* The Complaint details similar interactions between Plaintiff and Defendants taking place between December 9, 2013 and December 11, 2013.

It is also alleged that Defendant Stoner conspired with the other Defendants to falsify an "Initial Job Orientation," *See* Plaintiff's Brief in Opposition, Plaintiff's Exhibit B; Declaration of Shawn Stoner at 1, by "backdating" the document to January 25, 2013 when it was actually signed by Plaintiff on July 23, 2013. The document itself is meant to be signed by inmates "[u]pon assignment to a job or detail, and at least annually thereafter or whenever a new process, equipment, or chemical is introduced into the work area" and after the inmate receives training by a supervisor. Plaintiff's Exhibit B at 1. Believing the backdate was meant to falsely show that he was trained in cleaning Unit F2, Plaintiff refused to sign the document unless it reflected that it was signed on July 23, 2013 and not January 25, 2013. Stoner agreed and the document reflected both dates, with Stoner's initials appearing by the July 23, 2013 notation. Declaration of Shawn Stoner at 2; Plaintiff's Exhibit B. Shortly thereafter, Plaintiff's original orientation document, dated February 14, 2013, was located by FCI Milan staff. Declaration of Shawn Stoner at 2.

Plaintiff's tort claim filed with the NCRO was denied on February 18, 2014 as precluded by 28 C.F.R. § 301.319[1]. *Id.* at 3; Doc. 37-1 at 12. On June 23, 2014, Plaintiff attempted to file an administrative remedy request (BP-9) pursuant to 28 C.F.R. § 542.14(a)[2], claiming that FCI Milan

---

[1] That section reads,

> Inmates who are subject to the provisions of these Inmate Accident Compensation regulations are barred from recovery under the Federal Tort Claims Act (28 U.S.C. 2671 et seq.). Recovery under the Inmate Accident Compensation procedure was declared by the U.S. Supreme Court to be the exclusive remedy in the case of work-related injury. *U.S. v. Demko*, 385 U.S. 149 (1966).

28 C.F.R. § 301.319.

[2] That section reads,

> (a) Submission. The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP–9), is 20 calendar days following the date on which the basis for the Request occurred.

28 C.F.R. § 542.14(a).

3

staff falsified a statement during the investigation.[3] Doc. 37-2 at 3. The request was rejected as Plaintiff failed to show that he had attempted informal resolution prior to the BP-9 submission and failed to attach required documentation. On July 8, 2014, Plaintiff attempted to resubmit the same BP-9. It was rejected on the same grounds as the first. Plaintiff attempted no further BP-9 submissions. This action followed on August 13, 2014 wherein Plaintiff seeks, *inter alia*, $5 million in damages and injunctive relief against Defendants.

In his Complaint, Plaintiff claims that by forcing him to clean Unit F2, and the subsequent intimidation, Defendants committed assault, abuse of process, and violated his Eighth Amendment right against cruel and unusual punishment. Furthermore, Plaintiff alleges that Defendants committed fraud in falsifying the Initial Job Orientation document. Defendants have moved to dismiss the complaint for, *inter alia*, lack of administrative exhaustion. Because the Court finds that the issue of exhaustion is dispositive it will not address Defendants' other grounds for dismissal.

## DISCUSSION

Defendants have moved to dismiss Jirak's Complaint based on his failure to exhaust available administrative remedies. Pursuant to the PLRA, Defendants contend that Jirak's action is not properly before a federal court until he has exhausted the BOP's administrative procedure for prisoner grievances. The Court agrees. "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Prior to 1996, whether a prisoner was obligated to exhaust any available administrative remedies was largely discretionary with the court. *See Nussle*, 534 U.S. at 523. As passed in 1996, however, 42 U.S.C. § 1997e(a) of the PLRA makes "exhaustion in cases covered by [the statute] [] mandatory." *Id.* at 524. Further,

> unlike the previous provision, which encompassed only [42 U.S.C.] § 1983 suits, exhaustion is now required for all "action [s] (sic) . . . brought with respect to prison conditions," whether under § 1983 or "any other Federal law." Compare 42 U.S.C. § 1997e (1994 ed.) with 42 U.S.C. § 1997e(a) (1994 ed., Supp. V). Thus federal

---

[3] While it is clear from the dates that this allegedly falsified document differs from the Initial Job Orientation form, it is unclear what statement is referred to.

>prisoners suing under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)[4], must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit.

*Id.* (first alteration added). That Jirak is seeking money damages as well as injunctive relief is inconsequential. *See Booth v. Churner*, 532 U.S. 731, 733-34 (2001) (finding that the Prison Litigation Reform Act of 1995 as amended by 42 U.S.C. § 1997e(a) requires a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions. "The question is whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money. We hold that he must."). Furthermore, "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Nussle*, 534 U.S. at 532. Ultimately, the burden of showing a failure to exhaust is on the defendant. *Bock*, 549 U.S. at 212 (finding that "the usual practice under the Federal Rules is to regard exhaustion as an affirmative defense."); *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (citing *Bock*, 549 U.S. at 211-12) ("Nonexhaustion is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion."); *Wheeler v. J. Prince, M.D.*, 318 F. Supp. 2d 767, 771 (E.D. Ark. 2004) ("Inasmuch as exhaustion is an affirmative defense, defendants must raise and prove that plaintiff did not exhaust administrative remedies.").

In order to satisfy 42 U.S.C. § 1997e(a), an inmate must "pursu[e] 'the grievance process to its final stage' to 'an adverse decision on the merits.'" *Sturm*, 781 F.3d at 451 (quoting *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014)). Relevant to what constitutes the "final stage," the Supreme Court held in *Woodford v. Ngo* that "the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion[,]" 548 U.S. 81, 93

---

[4] In *Bivens*, the Supreme Court "implied a cause of action for damages against federal agents who allegedly violated the Constitution." *F.D.I.C. v. Meyer*, 510 U.S. 471, 473 (1994). The *Myer* opinion "emphasized that 'the purpose of *Bivens* is to deter *the officer*,' not the agency." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 69 (2001) (quoting *Meyer*, 510 U.S. 471 at 485) (emphasis in original).

5

(2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Thus, to constitute the "final stage" of a prison system's administrative process, the inmate must proceed through to the process's terminus. The inmate cannot manufacture that terminus by means of "bypass[ing] deliberately the administrative process by flouting the agency's procedural rules." *See id.* at 97.

"The Bureau of Prisons (BOP) has a multi-step process for inmates to use in bringing complaints about any aspect of their confinement: an informal resolution, [*see* 28 C.F.R. § 542.13(a),] an administrative remedy (with the warden), [*see* 28 C.F.R. § 542.14(a),] an appeal to the BOP's regional director, [*see* 28 C.F.R. § 542.15(a),] and finally an appeal to the BOP's central office[, *see id.*]." *Marlin v. Marquez*, 218 Fed. Appx. 545, 545 (8th Cir. 2007).[5] Each step has requisite deadlines that must be met. In *Marlin*, the Eighth Circuit found that the plaintiff, a federal inmate, had failed to rebut the BOP's attorney's declaration that the inmate had not complied with the foregoing BOP administrative process. The *Marlin* Court noted that it would have been impossible for the plaintiff to have complied with 28 C.F.R. § 542's process because he filed the complaint "just thirteen days after he was assigned to the job giving rise to the [] lawsuit[.]" *Id.*

Here, the Court agrees with Defendants that Plaintiff has failed to properly exhaust his administrative remedies. Defendants argue in their brief, Plaintiff "attempted to file an administrative remedy request related to the alleged falsification of a statement[.]" Defendants' Brief in Support of Motion to Dismiss at 10. Plaintiff, however, failed to comply with the requirements of the administrative process by not attaching required documentation. Moreover, Defendants assert that Plaintiff failed to provide proof that he filed an informal resolution request. Plaintiff, contending that the Defendants' arguments are false statements in and of themselves, asserts in his brief that he

---

[5] While unpublished opinions have no precedential value, they may be cited for their persuasive value. *See* Fed.R.App.P. 32.1. *See also Smith v. Colvin*, No. 14–CV–0412–CV–FHM, 2015 WL 5311351, at *4 n. 3 (N.D.O.K. Sep. 11, 2015); *U.S. v. Baker*, No. 15–3045, 2015 WL 5172896, at *1 n. 1 (10th Cir. Sep. 4, 2015).

"**never** filed an administrative remedy request (BP-9) for the Administrative Tort Claim spoken of in the Defendants Brief in Support of Motion to Dismiss." Plaintiff's Brief in Opposition at 7 (emphasis in original). In conjunction with his Brief in Opposition, Plaintiff submitted the "Affidavit of Gene Jirak" (Plaintiff's Exhibit A), a copy of the "Initial Job Orientation" form containing the alleged "backdating" (Plaintiff's Exhibit B), a letter directed to "Director Charles E. Samuels, Jr." in Washington, D.C. (Plaintiff's Exhibit C), an additional "Affidavit of Gene Jirak" (Plaintiff's Exhibit D), and various other documentation.[6] Collectively, this documentation does not rebut Defendants' assertion that Plaintiff failed to properly exhaust his administrative remedies. The incident giving rise to the Complaint occurred on April 30, 2013. Complaint at 3. Next, Plaintiff's Exhibits C and D show that Plaintiff filed an "FTCA Claim for Multiple Millbrook issues with a former Unit Manager" on May 13, 2013, Plaintiff's Exhibit C at 1, with the North Central Regional Office of the Federal Bureau of Prisons. Plaintiff's Exhibit D at 1. Furthermore, while the parties contest whether a BP-9 was actually filed by Plaintiff related to alleged document falsification[7], Plaintiff has presented no evidence that he comported with BOP administrative regulation before filing his tort claim related to the Unit F2 incident with NCRO.

Based on 28 C.F.R. § 542.13(a), Plaintiff was required to first present his grievance informally to prison staff members. Next, were he dissatisfied with the result, Plaintiff had "20 calendar days following the date on which the basis for the Request occurred" to file an administrative remedy (a BP-9) with the Warden of the institution. 28 C.F.R. § 542.14(a). Only after submitting his grievance to the Warden was Plaintiff eligible to appeal further by submitting "the appropriate form (BP-10)

---

[6] Exhibits E through H are "Regional Administrative Remedy Appeal" filings filed during Plaintiff's current incarceration at FCP Yankton. These filings are unrelated to the underlying facts contained in the Complaint. Therefore, they are irrelevant to the issue of exhaustion. Finally, Plaintiff's Exhibit I is a request to amend the "Tort Form," *see* Plaintiff's Exhibit I at 1, which was dated August 5, 2013 and sent to the NCRO by Plaintiff requesting that the claim filed on May 13, 2013 be amended accordingly. The amendment sought to add claims related to the alleged falsification of the "Initial Job Orientation" form.

[7] Attachment B of the Declaration of Shawn Stoner shows that a BP-9 was filed by Plaintiff in connection with the statement falsification claims. Doc. 37-2 at 2-6.

7

to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). Instead, similar to the facts in *Marlin*, within thirteen days of the alleged Unit F2 incident Plaintiff filed a grievance with the NCRO. *See* Plaintiff's Exhibit D at 1. Only upon completing the BP-9 would Plaintiff have been allowed to file a BP-10. Finally, while an investigation was undertaken at FCI Milan related to Plaintiff's claims, which resulted in the warden recommending that the administrative claim be denied, Defendants' Brief in Support of Motion to Dismiss at 3, the investigation was the result of Plaintiff's claim filed with the NCRO, not an informal resolution with staff or a BP-9. *See Woodford*, 548 U.S. at 95 (holding that 42 U.S.C. § 1997e(a) requires exhaustion that is proper and follows established administrative procedure). *See also Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003) (holding that an inmate-plaintiff must exhaust his administrative remedies before filing a complaint in federal court. Furthermore, whether or not remedies have been exhausted is judged based on when the complaint was filed not when the court is rendering its decision). Thus, based on the evidence contained in the record, the Court finds that Plaintiff has failed to properly exhaust his administrative remedies.

## CONCLUSION

Because Plaintiff failed to properly exhaust his administrative remedies, he is barred from bringing a federal action against Defendants. Accordingly,

> IT IS ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint, Doc. 31, based on failure to exhaust administrative remedies is granted.

Dated this 25th day of September, 2015.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, Clerk

By Summa Wahford
Deputy

8